**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Lee Louis Garcia,                          )
                                           )
            Plaintiff,                     )
                                           )        No. CIV 23-468-TUC-CKJ
vs.                                        )
                                           )        **ORDER**
Unknown Parties,                           )
                                           )
            Defendants.                    )
_____)

On October 10, 2023, Plaintiff Lee Louis Garcia ("Garcia") filed what the Court has accepted as a Complaint. *See* January 11, 2024, Order (Doc. 8). Garcia also filed a "Special Actions Creteroi" and an Application to Proceed in District Court Without Prepaying Fees or Costs (Docs. 5, 7).

The Complaint does not include a caption, but the Special Actions Creteroi and the Application to Proceed in District Court Without Prepaying Fees or Costs includes captions that state Defendants as "Unknown Parties[.]" This Court denied with leave to resubmit the original Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 8). Garcia has filed a new Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 9).

I. *In Forma Pauperis*

The Court may allow a plaintiff to proceed without prepayment of fees when it is shown by affidavit that he "is unable to pay such fees[.]" 28 U.S.C. § 1915(a)(1). Garcia's affidavit states his average monthly income during the past twelve months was $355.00 and

states he has no expenses.

The Court finds Garcia is unable to pay the fees and will grant the Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 9).

II.  *Screening Order*

This Court is required to dismiss a case if the Court determines that the allegation of poverty is untrue, 28 U.S.C. § 1915(e)(2)(A), or if the Court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

III.  *General Requirements*

A complaint is to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Rule 8(a), Fed.R.Civ.P.   While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  Especially where the pleader is *pro se*, the pleading should be liberally construed in the interests of justice. *Johnson v. Reagan*, 524 F.2d 1123 (9th Cir. 1975).  Indeed, a "complaint [filed by a pro se plaintiff] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), *quoting Erickson v. Pardus*, 551 U.S. 89, 94 (2007), *per curiam*.

A complaint must set forth sufficient facts that serves to put defendants on notice as to the nature and basis of the claim(s).  Failure to name potential defendants or sufficient facts to advise a defendant of the claim(s) may be result in no claim(s) being presented against a defendant.  Furthermore, all allegations of a claim are to be set forth in numbered paragraphs that should be limited to a single set of circumstances. Fed.R.Civ.P. 10(a). "Each claim  . . . shall be stated in a separate count . . . whenever a separation facilitates the clear

presentation of the matters set forth." *Id.* Failure to set forth claims in such a manner places the onus on the court to decipher which, if any, facts support which claims, as well as to determine whether a plaintiff is entitled to the relief sought. *Haynes v. Anderson & Strudwick, Inc.*, 508 F.Supp. 1303 (D.C.Va. 1981). Enforcement of this rule is discretionary with the Court, but such enforcement is appropriate where it is necessary to facilitate a clear presentation of the claims. *See*, *Benoit v. Ocwen Financial Corp., Inc.*, 960 F.Supp. 287 (S.D.Fla. 1997), *affirmed* 162 F.3d 1177 (compliance with rule required where allegations were so confusing and conclusory, claims were commingled, and impossible to determine nature of claims).

IV. *Requirement that Action State a Claim on Which Relief Can be Granted*

The United States Supreme Court has determined that, in order to survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its facts." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[1] While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Id.* at 555. Indeed, Fed.R.Civ.P. 8(a)(2) requires a showing that a plaintiff is entitled to relief "rather than a blanket assertion" of entitlement to relief. *Id.* at 555 n. 3. The complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right to action." *Id.* at 555. Although a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) has not been filed in this case, the Court considers these standards in screening Garcia's Complaint to determine if Garcia has "nudge[d] [his] claims across the line from conceivable to plausible." *Id.* at 570. The Court also considers that the Supreme Court has cited *Twombly* for the traditional proposition that "[s]pecific facts

---

[1]The holding in *Twombly* explicitly abrogates the well established holding in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

are not necessary [for a pleading that satisfies Rule 8(a)(2)]; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardue*, 551 U.S. 89 (2007).

In discussing *Twombly*, the Ninth Circuit has stated:

> "A claim has facial plausibility," the Court explained, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

> In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content," and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. *Id.*

*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009).

This Court must take as true all allegations of material fact and construe them in the light most favorable to Garcia. *See Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003). In general, a complaint is construed favorably to the pleader. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, 457 U.S. 800. Nonetheless, the Court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Furthermore, the Court is not to serve as an advocate of a *pro se* litigant, *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), in attempting to decipher a complaint.

In this case, the Complaint does not include a short and plain statement of the claim(s) showing Garcia is entitled to relief. He has not alleged any specific claim against any specific defendant. Reviewing Garcia's Complaint, the Court speculates the claim(s) involve tortious acts and/or violations of civil rights against various agencies and/or persons.[2] However, other than alleging events occurring in Tucson, Arizona, and varied

_____

[2] The Complaint refers to anal probing, raping, molesting, and sodomizing. Complaint, pp. 1-2. Further, it refers to energizing and infecting the lower class, homeless, and homosexuals with pesticide, ultrasound, Frey effect, artificial telepathy. *Id*. at p. 2.

agencies/organizations being aware of the "terror," no details are provided to state claims against named defendants or to indicate the Complaint has been filed within the statue of limitations.[3]  The Court cannot ascertain if any claim(s) states a claim on which relief may be granted against any defendant.

The Court will dismiss the Complaint with leave to amend.  If a court determines dismissal is appropriate, a plaintiff must be given at least one chance to amend a complaint when a more carefully drafted complaint *might* state a claim.  *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991).  Moreover, when dismissing with leave to amend, a court is to provide reasons for the dismissal so a plaintiff can make an intelligent decision whether to file an amended complaint.  *See Bonanno v. Thomas*, 309 F.2d 320 (9th Cir. 1962); *Eldridge v. Block*, 832 F.2d 1132 (9th Cir. 1987).  Here, the Complaint does not name any specific defendant and does not specify under what legal theories Garcia may be seeking to state a claim.  The Court will briefly discuss potential defendants and what may be the legal theories upon which Garcia is seeking to proceed.

## V.  *Caption and Parties*

Garcia's initial document does not include a caption.  The applicable rule states:

(a) Caption; Names of Parties.  Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation.  The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties.

Fed.R.Civ.P. 10(a).  Garcia is advised Fed.R.Civ.P. 7(a) requires pleadings to be identified – in this case, the initial pleading document needs to be identified as a complaint.

Additionally, neither Garcia's Complaint nor other documents submitted by Garcia name any defendants.  The Complaint states:

Physical, sexual and mental torment and torture . . . is happening in Tucson Az. Salvation Army Davis Monathan Air Force, F.B.I. State Prosecution Office, Pima County Jail and more are aware of this terror.

---

[3]Garcia's Special Actions Creteroi states the first anal probing occurred in Autumn 2022.

1    Complaint (Doc. 1, p. 1).  It is not clear which entities are alleged to have committed such

2    acts and which entities are alleged to be aware of the terror.  Additionally, Garcia is advised

3    the caption of a complaint must include any named defendants.

4

5    VI.  *Federal Entities*

6          The Complaint refers to Davis Monathan Air Force and the F.B.I.  However, absent

7    a statutory waiver of sovereign immunity, suits against the federal government are barred.

8    *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1018 (9th Cir. 1999).  Indeed, sovereign

9    immunity "is a threshold issue."  *Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1026 (9th

10   Cir. 2010).  A plaintiff must identify the relevant waiver or the court "lacks jurisdiction to

11   hear the action or any claim therein."  *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th

12   Cir.1982);  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  A waiver must be

13   unequivocal, and any limitations and conditions upon the government's consent to suit must

14   be strictly observed, without implied exceptions.  *Id*. at 538; *Hodge v. Dalton*, 10 F.3d 705,

15   707 (9th Cir. 1997); *accord Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) ("[A]

16   waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the

17   sovereign").

18

19   A.  *Federal Tort Claims Act*

20          To the extent Garcia may be seeking money damages from the federal government,

21   these entities are not proper defendants in an action for personal injury, property damage or

22   death arising from the activities of federal employees within the scope of their employment.

23   *See Sorrell v. Dep't of Veterans Affs.*, No. CV-16-03802-PHX-DLR, 2017 WL 1365029, at

24   *3 (D. Ariz. Apr. 14, 2017), *citing* 28 U.S.C. §§ 1346(b) & 2679(a), *Kennedy v. USPS*, 145

25   F.3d 1077 (9th Cir. 1998) ("the United States is the only proper party defendant in an FTCA

26   action"), *Allen v. Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984) (dismissing tort

27   claim against the VA because "[i]ndividual agencies of the United States may not be sued"

28

1   under the FTCA)).   The Federal Tort Claims Act ("FTCA") "is the exclusive remedy for

2   tortious conduct by the United States."  *Federal Deposit Ins. Corp. v. Craft*, 157 F.3d 697,

3   716 (9th Cir. 1998); 28 U.S.C. § 2679.  Under the FTCA, liability may be imposed "under

4   circumstances where the United States, if a private person, would be liable to the claimant

5   in accordance with the law of the place where the act or omission occurred."  28 U.S.C. §

6   1346(b); *see also McMurray v. United States*, 918 F.2d 834, 836 (9th Cir. 1990) (under the

7   FTCA, "suits against the United States are government by the substantive law of the place

8   where the act or omission complained of occurs").  Further, the FTCA "was not intended to

9   redress breaches of federal statutory duties." *Poynter v. United States*, 55 F.Supp.2d 558,

10  564 (W.D.La. 1999), *citing Johnson v. Sawyer*, F.3d 716, 727 (5th Cir. 1995).  The Court

11  finds Garcia has failed to state a claim upon which relief may be granted as to the named

12  federal agencies.

13          Further, the FTCA provides that "an action shall not be instituted upon a claim against

14  the United States for money damages for injury or loss of property or personal injury or death

15  caused by the negligent or wrongful act or omission of any employee of the Government

16  while acting within the scope of his office or employment" unless the claimant first exhausts

17  his or her administrative remedies.  28 U.S.C. § 2675(a).  The presentation of an

18  administrative claim is a jurisdictional prerequisite to the filing of suit.  *McNeil v. United*

19  *States*, 508 U.S. 106 (1993).

20

21  B.  *Claims Pursuant to Bivens*

22          *Bivens* claims are judicially created causes of action for constitutional violations.

23  *Egbert v. Boule*, 596 U.S 482, 486, 490-91 (2022).  Such claims may be raised against

24  individual federal officers for damages. *Id*.

25

26  C.  *Administrative Procedures Act*

27          To any extent Garcia is seeking relief other than money damages from federal

28

agencies or officials, the Administrative Procedure Act ("APA") waives the sovereign

immunity of federal agencies in some circumstances. 5 U.S.C. § 702. For claims permitted

under the APA's waiver of sovereign immunity, federal district court jurisdiction may be

proper under the federal question statute, 28 U.S.C. § 1331, the declaratory judgment statute,

28 U.S.C. §§ 2201–2202, or the mandamus statute, 28 U.S.C. § 1361. *Transohio Savs. Bank*

*v. Director, Office of Thrift Supervision*, 967 F.2d 598, 606 (D.C.Cir.1992).

Further, the Ninth Circuit has stated:

> The APA's waiver of sovereign immunity, however, contains several limitations. By
> its own terms, [5 U.S.C.] § 702 does not apply to claims for "money damages" or
> claims "expressly or impliedly forbid[den]" by another statute granting consent to suit.
> Moreover, only "[a]gency action made reviewable by statute and final agency action
> for which there is no other adequate remedy in a court" are subject to judicial review.
> 5 U.S.C. § 704. Therefore, the APA waives sovereign immunity for [third-party
> plaintiff's] claims only if three conditions are met:  (1) its claims are not for money
> damages, (2) an adequate remedy for its claims is not available elsewhere and (3) its
> claims do not seek relief expressly or impliedly forbidden by another statute.

*Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998).

In other words, the APA allows an individual to challenge a final agency action in

federal court if the individual has suffered a legal wrong because of that agency action. *See*

5 U.S.C. § 701, *et seq*. Final agency action includes an agency's failure to act when the

action is legally required. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("a

claim under [the APA] can proceed only where a plaintiff asserts that an agency failed to take

a *discrete* agency action that it is required to take"), *emphasis in original*. Indeed, the Ninth

Circuit has stated, "the second sentence of § 702 waives sovereign immunity broadly for all

causes of action that meet its terms, while § 704's 'final agency action' limitation applies only

to APA claims." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1172 (9th Cir. 2017).


1.  *Tortious Conduct under the APA*

However, as summarized by another district court:

> More fundamentally, Section 702 of the APA does not waive sovereign immunity for
> Plaintiffs' negligent supervision claim. *See Diaz–Bernal v. Meyers*, 758 F.Supp.2d
> 106, 119 (D.Conn.2010) ("[T]he APA does not waive sovereign immunity for
> declaratory relief in conjunction with the FTCA . . ."). Section 702, when it applies,

"waives sovereign immunity in 'nonstatutory' review of agency action under [28 U.S.C. § 1331] . . . This jurisdictional route pursuant to sections 1331 and 702 may not be used, however, if 'any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *See United States v. Nicolet*, No. 85–3060, 1986 U.S. Dist. LEXIS 15795 (E.D.Pa.1986), at *9 (quoting 5 U.S.C. § 702(2)).[9] The FTCA prohibits suit here because its waiver of immunity extends only to monetary, and not injunctive or declaratory, relief. *Id.*; *accord Beale v. DOJ*, 2007 U.S. Dist. 6837, at *19 (D.N.J.2007) (noting that Section 702 of the APA cannot waive immunity from claims statutorily derived from the FTCA).[10] Therefore, the APA does not apply.

> [9]Subsection (2) provides: "Nothing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."

> [10]Plaintiffs may be suggesting in their opposition papers that the Court has supplemental jurisdiction to adjudicate their claim against HUD based on its federal question jurisdiction over Plaintiffs' due process claim against HPD for failing to conduct a hearing pursuant to 24 C.F.R. 982.555(a). (P. Opp. 11–12; Am. Compl. ¶¶ 13–16.) This argument is meritless. Jurisdictional statutes do not waive the United States' sovereign immunity. *See Doe v. Civiletti*, 635 F.2d 88, 94 (2d Cir.1980) (Section 1331); *Ireland v. Suffolk County of New York*, 242 F.Supp.2d 178, 192–93 (E.D.N.Y.2003) (Section 1367).

*Junior v. City of New York, Hous. Pres. & Dev. Corp.*, No. 12 CIV. 3846 PAC, 2013 WL 646464, at *4 (S.D.N.Y. Jan. 18, 2013).

Indeed, this Court is not aware of any authority that recognizes a waiver of the United States' sovereign immunity for claims alleging tortious conduct and seeking declaratory or injunctive relief. To the extent, therefore, Garcia seeks declaratory or injunctive relief based on tortious conduct, the Court finds the United States has not waived its sovereign immunity.

## 2. *Non-Tortious Conduct Under the APA*

Garcia may be seeking to state a claim for unwritten policies of federal defendants that facilitate or allow criminal conduct to be committed in its facilities. To the extent Garcia seeks to state a claim for non-tortious conduct against a federal agency under the APA, the APA limits judicial review to agency action or inaction in the form of "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Further, an agency's action must be "reviewable by statute" or be a "final agency action for which there is no other adequate remedy[.]" 5 U.S.C. § 704;

1   *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171 (9th Cir. 2017).  In this case,

2   Garcia has not identified any statute by which defendants' actions or inactions are reviewable

3   by statute.

4          Garcia must, therefore, allege a final agency action.  For an agency action to be final,

5   it "must mark the consummation of the agency's decisionmaking process—it must not be of

6   a merely tentative or interlocutory nature" and "the action must be one by which rights or

7   obligations have been determined, or from which legal consequences will flow."  *United*

8   *States Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016), *quoting Bennett*

9   *v. Spear*, 520 U.S. 154, 177–78 (1997). The Ninth Circuit has stated:

10          In determining whether an agency's action is final, we look to whether [a] the action
            amounts to a definitive statement of the agency's position or [b] has a direct and
11          immediate effect on the day-to-day operations of the subject party, or [c] if immediate
            compliance with the terms is expected.
12
13   *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006), *internal*

14   *quotations and citations omitted*. The focus is "on the practical and legal effects of the

     agency action:  '[T]he "finality element must be interpreted in a pragmatic and flexible
15
     manner."'"  *Id.*, *citations omitted*.
16
17          However, the Court recognizes the APA requires a court to "compel agency action

18   unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  But such a claim "can

19   only proceed where a plaintiff asserts that an agency failed to take a discrete agency action

20   that it is required to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004).

     This limitation "rules out judicial direction of even discrete agency action that is not
21
     demanded by law." *Id.* at 65.  Further, as a result of this limitation, courts do not have the
22
23   "authority to compel agency action merely because the agency is not doing something we

24   may think it should do." *Zixiang Li v. Kerry*, 710 F.3d 995, 1004 (9th Cir. 2013).

25          Moreover, district courts have recognized that a final and judicially reviewable agency

26   action need not be in writing.  *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1319

27   (S.D. Cal. 2018), *Venetian Casino Resort LLC v. EEOC*, 530 F.3d 925, 929 (D.C. Cir. 2008)

28   (reviewing challenge to an agency's "decision ... to adopt [an unwritten] policy of disclosing

confidential information without notice" because such a policy was "surely a consummation of the agency's decisionmaking process" that impacted the plaintiff's rights); R.I.L.-R, 80 F. Supp. 3d at 174–176 (determining that plaintiffs had shown a reviewable unwritten "DHS policy direct[ing] ICE officers to consider deterrence of mass migration as a factor in their custody determinations" as underlying the plaintiffs' detention). Indeed, "a contrary rule 'would allow an agency to shield its decisions from judicial review simply by refusing to put those decisions in writing.'" *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015), *citation omitted*.

Garcia has not identified any rules, orders, or even guidance that set forth any contested policy of federal defendants. *Bark v. United States Forest Serv.*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014). Moreover, a final agency action requires more than attaching a policy label to a plaintiff's "amorphous description" of a federal agency's practices. *Id.*; *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990) (Supreme Court rejected a challenge to a program that was not derived from any authoritative text, but was instead the agency's own term for describing certain continuing operations). Garcia's allegations appear to be a "generalized complaint about agency behavior" that gives rise to no cause of action. *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C.Cir. 2006).

## VII.  *State and County Defendants*

Garcia refers to the state prosecution office and the Pima County Jail. To any extent Garcia is seeking to state a claim against state and county officials in their official capacity, this Court is barred from granting relief by the Eleventh Amendment of the U.S. Constitution. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119-120 (1984). However, individual persons may be sued in their individual capacities. *Carroll v. Robinson*, 874 P.2d 1010, 1015 (Ariz.App. 1994), *citing Will v. Michigan Department of State Police*, 491 U.S. 58, 71 n. 10,  (1989), *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

Further, as summarized by another court:

"State agencies that may sue and be sued are known as jural entities; non-jural entities are not subject to suit." *Morgan v. Arizona*, 2007 WL 2808477, * 8 (D. Ariz. 2007) (citations omitted). An action cannot be brought against a state or county agency that lacks the authority to sue and be sued. *See, Gotbaum ex rel. Gotbaum v. City of Phoenix*, 2008 WL 4628675, *7, 617 F.Supp.2d 878 (D. Ariz. 2008); *see also Braillard v. Maricopa County*, 224 Ariz. 481, 487, ¶ 12, 232 P.3d 1263, 1269 (App. 2010) (citations omitted) ("Governmental entities have no inherent power and possess only those powers and duties delegated to them by their enabling statutes. Thus, a governmental entity may be sued only if the legislature has so provided.").

*Moreno v. Cochise Cnty. Jail*, No. CV 17-432-TUC-CKJ, 2018 WL 2971770, at *3 (D. Ariz. June 13, 2018), *amended sub nom. Moreno v. Saavedra*, No. CIV 17-432-TUC-CKJ, 2019 WL 2296594 (D. Ariz. May 30, 2019).

Arizona statute permits a county to be sued. A.R.S. §11-201(A)(1). However, Pima County Jail is a non-jural entity which may not be sued. *See  Davis v. Buckley*, No. CV 12-078-TUC-CKJ, 2012 WL 12878580, at *1 (D. Ariz. Mar. 20, 2012); *Moreno*, 2018 WL 2971770, at *3.

As to the state prosecutor's office, it is not clear if Garcia is seeking to name a County Attorney's Office or the Arizona Attorney General's Office. The Court advises Garcia that "County Attorney's Office[s are] non-jural entit[ies] that lack[] the capacity to be sued." *Greer v. Pima Cnty. Attorney's Off.*, No. CV-23-00528-TUC-RM, 2024 WL 942057, at *2 (D. Ariz. Mar. 5, 2024). As to the Arizona Attorney General's Office, A.R.S. § 41–193 provides the Arizona Attorney General shall "[p]rosecute and defend in the supreme court all proceedings in which the state or an officer thereof in his official capacity is a party."

In other words, individual actors of a County Attorney's Office may be sued, while the State of Arizona or its officers may be sued in their official capacities.

## VIII.  *Salvation Army*

In the United States, the Salvation Army operates as a 501(c)(3) nonprofit organization. *Garcia v. Salvation Army*, 918 F.3d 997, 1002 (9th Cir. 2019); 26 U.S.C. § 501(c)(3). Arizona allows for tort actions against charitable organizations. *See e.g.* Tort Immunity of Nongovernmental Charities – Modern Status, 25 A.L.R.4th 517 (Originally

published in 1983), *citing Ray v Tucson Medical Center*, 230 P2d 220 (Ariz. 1951). However, unless Garcia alleges "state action" by the Salvation Army, Garcia cannot state a civil rights claims pursuant to 42 U.S.C. § 1983 against the Salvation Army. *See e.g. Taylor v. Mani*, No. C10-1472JLR, 2011 WL 92998, at *2 (W.D. Wash. Jan. 11, 2011).

IX.  *Possible Claims*

It is not clear what claims Garcia may be attempting to allege.  Specifically, the Complaint does not clarify if government entities, government officials or private persons are alleged to have participated in tortious conduct or conduct that violated civil rights . The Court will briefly discuss possible claims Garcia may be attempting to state.

A.  *Tort Claims*

To state a negligence claim under Arizona law, which is the law of the place where the possible act or omission occurred, Garcia  must allege "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages."  *Gipson v. Kasey*, 150 P.2d 228, 230 (Ariz. 2007); *Ballesteros v. State*, 780 P.2d 458, 460 (Ariz. App. 1989).

As to a possible tort claim for battery, Garcia must allege a "defendant intentionally engaged 'in an act that results in harmful or offensive contact with the person of another.'" *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1210 (9th Cir. 2016) *quoting Duncan v. Scottsdale Med. Imaging, Ltd.*, 70 P.3d 435, 438 (Ariz. 2003).  As to an assault claim, Garcia must allege a "defendant acted 'with intent to cause another harmful or offensive contact or apprehension thereof, and the other person apprehend[ed] imminent contact.'"  *Paradise Valley*, 815 F.3d at 1210, *quoting Garcia v. United States*, 826 F.2d 806, 809 n.9 (9th Cir. 1987).  The battery and assault claims "are the same except that assault does not require  the offensive touching or contact."  *Paradise Valley*, 815 F.3d at 1210.

1    Additionally:

2        Under Arizona law, "the act that caused the harm will qualify as intentional conduct
         only if the actor desired to cause the consequences—and not merely the act itself—or
3        if he was certain or substantially certain that the consequences would result from the
         act." In this respect, Arizona law follows the principle from the Restatement (Second)
4        of Torts that: "If the actor knows that the consequences are certain, or substantially
         certain, to result from his act, and still goes ahead, he is treated by the law as if he had
5        in fact desired to product the result."

6    *Paradise Valley*, 815 F.3d at 1210, *quoting Mein ex rel. Mein v. Cook*, 193 P.3d 790, 794

7    (Ariz.App. 2008).

8        To state a claim for intentional infliction of emotional distress, a plaintiff must allege

9    (1) the conduct of defendant was "extreme" and "outrageous," (2) defendant intended to

10   cause emotional distress or recklessly disregarded the near certainty that such conduct would

11   result from his conduct, and (3) severe emotional distress did occur as a result of defendant's

12   conduct. *Citizen Publishing Co. v. Miller*, 115 P.3d 107, 111 (Ariz. 2005); *Wells Fargo Bank*

13   *v. Arizona Laborers, Teamsters, and Cement Masons Local No. 395 Pension Trust Fund*, 38

14   P.3d 12 (Ariz. 2002) (discussing difference between negligent and intentional torts). The

15   acts must be "'so outrageous in character and so extreme in degree, as to go beyond all

16   possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a

17   civilized community.'" *Mintz v. Bell Atlantic Systems Leasing International, Inc.*, 905 P.3d

18   559, 563 (Ariz.App. 1995), *quotation omitted*. Further, the defendant must either intend to

19   cause emotional distress or recklessly disregard the near certainty that such distress will result

20   from his conduct. *Ford v. Revlon*, 734 P.2d 580, 585 (Ariz.1987).

21       Additionally, a plaintiff in a negligent infliction of emotional distress action must

22   witness an injury to a closely related person, suffer mental anguish manifested as physical

23   injury, and be within the zone of danger. *Kaufman v. Langhofer*, 222 P.3d 272, 279

24   (Ariz.App. 2009). "Transitory physical phenomena" such as weeping and insomnia "are not

25   the type of bodily harm which would sustain a cause of action for emotional distress." *Burns*

26   *v. Jaquays Mining Corp.*, 752 P.2d 28, 32 (Ariz.App.1988); *see Ball v. Prentice*, 781 P.2d

27   628 (Ariz.App.1989) (permitting action for negligent infliction of emotional distress where

28

plaintiff was a victim, not a bystander, and sustained minor physical injuries as well as significant emotional distress).

Under Arizona law, the intentional torts of false arrest and false imprisonment differ only in terminology and are defined as "the detention of a person without his consent and without lawful authority." *Slade v. City of Phoenix*, 541 P.2d 550, 552 (Ariz.1975), *citation omitted*; *see also Al–Asadi v.. City of Phoenix*, 2010 WL 3419728, at *3 (D.Ariz. Aug. 27, 2010). "The essential element necessary to constitute either false arrest or false imprisonment is unlawful detention." *Slade*, 541 P.2d at 552. "Further, false arrest or imprisonment does not require physical detention—the tort may be committed by intimidation." *Gortarez v. Smitty's Super Valu, Inc.*, 680 P.2d 807, 811 n. 2 (Ariz.1984), *citing* W. Prosser, Law of Torts § 11, at 42–43 (4th ed.1971) (finding trial court erred in directing a verdict for defendants on false arrest and imprisonment counts alleged against a shopkeeper brought by a customer suspected of shoplifting as issues whether the detention was carried out in a reasonable manner and for a reasonable length of time were for the jury). The Court of Appeals of Arizona has stated:

> To prove a false imprisonment claim, a plaintiff must allege and prove: "(1) the defendant acted with intent to confine another person within boundaries fixed by the defendant; (2) the defendant's act resulted in such confinement, either directly or indirectly; and (3) the other person was conscious of the confinement or was harmed by it."

*Allen v. Arizona Dept. of Corrections*, 2009 WL 2382026, at *4 (Ariz.App. Aug. 4, 2009) *quoting Hart v. Seven Resorts, Inc.*, 947 P.2d 846, 855 (Ariz.App.1997); Restatement (Second) of Torts § 35 (1965). Indeed, the "essential element of false imprisonment is the direct restraint of personal liberty or the freedom of locomotion." *Hart*, 947 P.2d at 855. This restraint "may be accomplished by physical force, by threats of force or intimidation or by assertion of legal authority." *Martinez v. City of Avondale*, No. CV-12-1837-PHX-LOA, 2014 WL 178144, at *7 (D. Ariz. Jan. 16, 2014), *quoting Hunt ex rel. DeSombre v. State, Dept. of Safety and Homeland Sec., Div. of Delaware State Police*, 69 A.3d 360, 368 (Del.Supr.2013).

B. *Claims for Civil Rights Violations*

To state a 42 U.S.C. § 1985(3) conspiracy to interfere with civil rights claim, "a plaintiff must allege []:  (1) a conspiracy; (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in the furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992); *see also Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000). An essential requirement for a § 1985(3) claim is that there must be some racial or other class-based "invidious discriminatory animus" for the conspiracy.  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69 (1993), *quoting Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

Additionally, a government entity "cannot be held liable solely because it employs a tortfeasor." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) . The local government "itself must cause the constitutional deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir.1992), *cert. denied*, 510 U.S. 932 (1993).  Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the *respondeat superior* theory and demonstrate that the alleged constitutional violation was the product of a policy or custom of the local governmental unit. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478–480 (1986).

Generally, a plaintiff can demonstrate governmental liability for a constitutional violation in one of three ways. First, he can show that a person or entity with decision-making authority within the government expressly enacted or authorized an unconstitutional policy or gave an unconstitutional order.  See *Monell*, 436 U.S. at 694 (holding that municipal liability is properly imposed where a policymaker "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and

1   promulgated by that body's officers"); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483

2   (1986) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate

3   choice to follow a course of action is made from among various alternatives by the official

4   or officials responsible for establishing final policy with respect to the subject matter in

5   question").   Second, a plaintiff can prove that his injury was the result of a government

6   custom, *i.e.*, a practice "so permanent and settled" as to constitute a "custom or usage" of the

7   government defendant.   *Monell*, 436 U.S. at 691; *see also Pembaur*, 475 U.S. at 481–82,

8   n.10.   Finally, a governmental body may be liable if its failure to train employees has caused

9   a constitutional violation and the failure to train amounts to deliberate indifference to the

10  rights of individuals with whom those employees come into contact.   *See City of Canton v.*

11  *Harris*, 489 U.S. 378, 388–89 (1989).

12        After *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

13        "Allegations of *Monell* liability will be sufficient . . . where they: (1) identify the
    challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain

14  how the policy/custom caused the plaintiff harm; and (4) reflect how the
    policy/custom amounted to deliberate indifference, i.e. show how the deficiency

15  involved was obvious and the constitutional injury was likely to occur."

16  *Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1167 (C.D. Cal. 2018), *citations*

17  *omitted*; *see also Harvey v. City of S. Lake Tahoe*, No. CIV S-10-1653 KJM EFB PS, 2011

18  WL 3501687, *3 (E.D. Cal. Aug. 9, 2011), *citations omitted* (dismissing claims because

19  "Plaintiff has not identified any [municipal] policy or custom in his first amended complaint,

20  has not alleged that the . . . employees acted pursuant to a County policy or custom, and has

21  not alleged that their conduct conformed to an official policy or custom.   Additionally,

22  because he has not identified any such policy or custom, he also has not explained how the

23  policy or custom is deficient, has not explained how the policy or custom caused him harm,

24  and has not explained how the policy or custom amounted to deliberate indifference.").

25        Additionally, a government entity "may be liable if it has a 'policy of inaction and such

26  inaction amounts to a failure to protect constitutional rights.'"   *Lee v. City of Los Angeles*, 250

27  F.3d 668, 681 (9th Cir.2001), *quoting Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992);

28

1   *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir.2007).  However, "[l]iability for

2   improper custom may not be predicated on isolated or sporadic incidents; it must be founded

3   upon practices of sufficient duration, frequency and consistency that the conduct has become

4   a traditional method of carrying out policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th

5   Cir.1995), *cert. denied*, 520 U.S. 1117 (1997).

6          Additionally, the Court recognizes that Congress did not intend to "impose liability

7   vicariously on [employers or supervisors] solely on the basis of the existence of an

8   employer-employee relationship with a tortfeasor."  *Monell*, 436 U.S. at 692.  Supervisory

9   personnel are not generally liable under section 1983 for actions of their employees under

10  a *respondeat superior* theory; therefore, when a named defendant holds a supervisory

11  position, the causal link between him and the claimed constitutional violation must be

12  specifically alleged.  *See Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir.2001); *Fayle v.*

13  *Stapley*, 607 F.2d 858, 862 (9th Cir.1979).

14         To state a claim for supervisor liability, a plaintiff must allege facts to indicate that

15  the supervisor defendant either: (1) personally participated in the alleged deprivation of

16  constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3)

17  promulgated or implemented a policy "so deficient that the policy itself 'is a repudiation of

18  constitutional rights' and is 'the moving force of the constitutional violation.'"  *Hansen v.*

19  *Black*, 885 F.2d 642, 646 (9th Cir.1989); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989);

20  *see also Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) (supervisory liability in

21  an individual capacity requires:  (1) that defendant's "own culpable action or inaction in the

22  training, supervision, or control of his subordinates" caused the constitutional injury, (2) that

23  the defendant "acquiesce[d] in the constitutional deprivations of which [the] complaint is

24  made," or (3) that his conduct showed a "reckless or callous indifference to the rights of

25  others").

26  . . . . .

27

28

1   X.   *Statutes of Limitations*

2        "The FTCA's statute of limitations is two years unless tolled."   *Gallardo v. United*

3   *States*, 755 F.3d 860, 862 (9th Cir. 2014), *citing*  28 U.S.C. § 2401(b).  Another court has

4   summarized:

5        The FTCA requires the claimant to file an administrative claim with the appropriate
         federal agency within two years of its accrual, and suit must be commenced within six
6        months of the agency's denial of the claim or after six months has elapsed without a
         final disposition of the claim.  28 U.S.C. § 2401(b); *Jerves v. United States*, 966 F.2d
7        517, 519 (9th Cir. 1992).

8   *Hirano v. Davidson*, No. CV2101352PHXMTLDMF, 2022 WL 17903752, at *3 (D. Ariz.

9   Dec. 23, 2022).

10       Claims pursuant to APA, however, are subject to a six year statute of limitations.

11  *United States v. Est. of Hage*, 810 F.3d 712, 720 (9th Cir. 2016), *citation omitted* ("The

12  six-year statute of limitations found in 28 U.S.C. § 2401(a) applies to APA claims.")

13       Additionally, claims pursuant to 42 U.S.C. § 1983 and *Bivens* are subject to a two-year

14  statute of limitations.  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (because 42

15  U.S.C. § 1983 does not contain its own statute of limitations, federal courts borrow the

16  statute of limitations applicable to personal injury claims in the forum state); Ariz. Rev. Stat.

17  § 12–542 (personal injury claims are subject to a two-year statute of limitations); *Van Strum*

18  *v. Lawn*, 940 F.2d 406, 410 (9th Cir. 1991) (the statute of limitations for a *Bivens* claim is

19  the same as the statute of limitations for a Section 1983 claim).

20       Additionally, Arizona personal injury tort claims are subject to either one or two year

21  statutes of limitations.  *See e.g.* A. R.S. § 23-541 (false imprisonment) A.R.S. § 12-542 (torts

22  causing injury to persons); *Ruggles v. City of Scottsdale*, No. CV-18-02950-PHX-SPL, 2019

23  WL 4860682, at *4 (D. Ariz. Oct. 2, 2019), *aff'd*, 830 F. App'x 886 (9th Cir. 2020) (although

24  intentional infliction of emotional distress claim has a two-year statute of limitations under

25  Arizona law, when such claim is against public entities, it is subject to a one-year statute of

26  limitations); *Matthews v. City of Tempe*, No. CV-22-00407-PHX-SPL, 2023 WL 6880652,

27  at *5 (D. Ariz. Oct. 18, 2023).

28

1  XI.  *Subject Matter Jurisdiction*

2  　　The Court must dismiss a civil action if at any time it determines it lacks subject

3  matter jurisdiction.  Fed. R. Civ. P. 12(b)(1), (h)(3).  Federal courts have limited subject

4  matter jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

5  This Court presumes a civil action lies outside its limited jurisdiction and the burden to prove

6  otherwise rests on a party asserting jurisdiction exists.  *Id*.  Additionally, an opposing party

7  can never forfeit or waive a challenge to subject matter jurisdiction.  *Arbaugh v. Y&H Corp.*,

8  546 U.S. 500, 514 (2006).  Generally, this Court has "original jurisdiction of . . . civil actions

9  arising under the Constitution, laws, or treaties of the United States" and  "civil actions where

10  the matter in controversy exceeds the sum or value of $75,000" and diversity of citizenship

11  between the parties exists.  28 U.S.C. §§ 1331, 1332.

12  　　Garcia is advised that if he fails to state a federal-law claim in his amended complaint,

13  the Court will decline to exercise supplemental jurisdiction over the state-law claims.  *See*

14  *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1156 (9th Cir. 2013), *citing*  § 1367(c)(3)

15  ("[O]nce the district court, at an early stage of the litigation, dismissed the only claim over

16  which it had original jurisdiction, it did not abuse its discretion in also dismissing the

17  remaining state claims."); *Sanford v. MemberWorks, Inc.,* 625 F.3d 550, 561 (9th Cir. 2010),

18  *citation omitted* ("[I]n the usual case in which all federal-law claims are eliminated before

19  trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial

20  economy, convenience, fairness, and comity—will point toward declining to exercise

21  jurisdiction over the remaining state-law claims.").

22

23  XII.  *Amended Complaint*

24  　　The Court finds that dismissal with leave to amend is appropriate.  *See Noll v.*

25  *Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (leave to amend is liberally granted unless

26  absolutely clear deficiencies cannot be cured by amendment).  The Court has provided the

27  reasons for the dismissal so Garcia can make an intelligent decision whether to file an

28

Amended Complaint.  *See Bonanno*; , 309 F.2d 320 (9th Cir. 1962); *Eldridge v. Block*, 832 F.2d 1132 (9th Cir. 1987).  Furthermore, Garcia is advised that all causes of action alleged in the original Complaint which are not alleged in any Amended Complaint will be waived. *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990) ("an amended pleading supersedes the original"); *King v. Atiyeh*, 814 F.2d 565 (9th Cir. 1987).

Garcia is advised that any Amended Complaint filed by him must be retyped or rewritten in its entirety and may not incorporate any part of the original complaint by reference.  Any Amended Complaint submitted by Garcia shall be clearly designated as an Amended Complaint on the face of the document.  Additionally, Garcia is advised civil *pro se* forms, including Complaints, are available on the District of Arizona's website: https://www.uscourts.gov/forms/civil-pro-se-forms.

XIII.  *Special Actions Creteroi*

In his Special Actions Creteroi, Garcia states the relief he is seeking is justice.  Garcia is advised the Court will preside over this action to ensure a "just" determination.  *See* Fed.R.Civ.P. 1.  However, if Garcia is attempting to state "a demand for the relief sought," such demand is to be included in a complaint.  Fed.R.Civ.P. 8.  The request will be denied, with Garcia being directed to include a demand for relief in any Amended Complaint he may submit.

XIV.  *Warnings to Garcia*

A.  If Garcia's address changes, Garcia must file and serve a notice of a change of address in accordance with LRCiv 83.3(d).  Garcia must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

B.  Garcia must submit an additional copy of every filing for use by the Court.  *See* LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Garcia.

1       C. If Garcia fails to timely comply with every provision of this Order, including these

2   warnings, the Court may dismiss this action without further notice. *See* Fed.R.Civ.P. 41(b);

3   *see also Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir.) (district court may dismiss action for

4   failure to comply with any order of the Court), *cert. denied*, 506 U.S. 915 (1992).

5

6       Accordingly, IT IS ORDERED:

7       1.    The Application to Proceed in District Court Without Prepaying Fees or Costs

8   (Doc. 9) is GRANTED.

9       2.    Garcia's Complaint is DISMISSED WITHOUT PREJUDICE, WITH LEAVE

10   TO AMEND.  **Garcia shall have until May 17, 2024, to file an Amended Complaint.**

11       3.    Any Amended Complaint must be retyped or rewritten in its entirety and may

12   not incorporate any part of the prior Complaint or subsequent pleadings by reference.  All

13   causes of action alleged in the original complaint which are not alleged in any amended

14   complaint will be waived.  Any Amended Complaint submitted by Garcia should be clearly

15   designated as an amended complaint on the face of the document.

16       4.    The Clerk of the Court is DIRECTED to enter a judgment of dismissal, without

17   prejudice, without further notice to Garcia, if Garcia fails to file an Amended Complaint on

18   or before May 17, 2024.

19       5.    A clear, legible copy of every pleading or other document filed SHALL

20   ACCOMPANY each original pleading or other document filed with the Clerk for use by the

21   District Judge to whom the case is assigned.  *See* L.R.Civ. 5.4.  **Failure to submit a copy**

22   **along with the original pleading or document may result in the pleading or document**

23   **being stricken without further notice to Garcia.**

24       6.    At all times during the pendency of this action, Garcia shall immediately advise

25   the Court of any change of address and its effective date.  Such notice shall be captioned

26   "NOTICE OF CHANGE OF ADDRESS".  The notice shall contain only information

27   pertaining to the change of address and its effective date.  The notice shall not include any

28

1  motions for any other relief.  Garcia shall serve a copy of the Notice of Change of Address

2  on all served opposing parties.  Failure to file a NOTICE OF CHANGE OF ADDRESS may

3  result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

4        7.     The Special Actions Creteroi (Doc. 5) is DENIED.  Garcia is advised to

5  included a demand for relief in any Amended Complaint he may submit.

6        DATED this 15th day of April, 2024.

7

8

9                                    Cindy K. Jorgenson

10                              United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28